UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) – PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION (Dkt. 3, filed on January 23, 2026)

## I. INTRODUCTION

On January 23, 2026, Umair Wasim ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for declaratory and injunctive relief against the United States Immigration and Customs Enforcement ("ICE"), Todd Lyons, Kristi Noem, Thomas Giles, James Pilkington, and Geo Group Inc. (collectively, "Respondents").[1] Dkt. 1 ("Pet"). Petitioner requests that the Court order Petitioner's immediate release from custody, or, in the alternative, order Respondents to provide Petitioner with a bond hearing before a neutral magistrate; declare that the application of 8 U.S.C. § 1225(b)(2) to Petitioner unlawfully mandates his continued detention, and violates the Immigration and Nationality Act ("INA"); and declare that Petitioner's re-arrest without a hearing violated the Due Process Clause of the Fifth Amendment. See Pet. at 15-16.

The same day, Petitioner filed the instant *ex parte* application for a temporary restraining order and, in the alternative, a preliminary injunction. Dkt. 3 ("TRO").

---

[1] Todd Lyons is the Acting Director of ICE; Kristi Noem is the Secretary of the Department of Homeland Security ("DHS"); Thomas Giles is the Los Angeles Field Office Director for ICE; James Pilkington is the Assistant Los Angeles Field Office Director for ICE; Geo Group Inc. is the warden of the Adelanto Detention Facility. Pet. ¶¶ 7-11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

On January 26, 2026, the Court enjoined Respondents from relocating Petitioner outside the Central District of California until further order of Court. Dkt. 5.

On January 28, 2026, Respondents filed an opposition to Petitioner's *ex parte* application for a TRO. Dkt. 7 ("Opp."). Respondents concurrently filed a Declaration of Henry Cervantes, Deportation Officer for ICE. Dkt. 7-1 ("Cervantes Decl.").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.  BACKGROUND

Petitioner Umair Wasim has been a Lawful Permanent Resident of the United States since December 6, 2016. Pet. ¶ 15.

On November 30, 2023, Petitioner returned to the United States from a brief trip abroad and was detained at the airport. Id. ¶ 16. Petitioner was served with a Notice to Appear (Form I-862) that charged him as removable from the United States under Immigration and Nationality Act (INA) Section 212(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude. Petitioner was processed for INA Section 240 removal proceedings. Cervantes Decl. ¶ 8. The Notice to Appear alleges that on August 26, 2019, Petitioner was convicted of one felony violation of California Penal Code section 288.3(a) (willfully and unlawfully contacting or communicating with a minor) and one misdemeanor violation of section 647(b). Pet. ¶ 20; see also Cervantes Decl. ¶ 11 (explaining that on July 3, 2024, DHS filed a form I-261 (Additional Charges of Removability/ Inadmissibility) to allege that Petitioner was convicted of a violation of California Penal Code Section 288.3(a)).

However, as documented on Petitioner's Form I-213 (Record of Deportable/Inadmissible Alien), Petitioner was "paroled pending [his] [INA Section] 240 [r]emoval proceedings and released on his own recognizance." Dkt. 1-1 at 37; Pet. ¶ 16.

On November 14, 2024, after reviewing the parties' briefs and hearing their positions, an Immigration Judge found all the allegations in Petitioner's Notice to Appear to be supported and sustained Petitioner's single charge of removability. Cervantes Decl. ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

On or about November 21, 2025, Petitioner was taken into ICE custody during a regularly scheduled appointment. Petitioner is currently detained at the Adelanto Detention Facility. Pet. ¶ 19.

ICE is treating Petitioner as an "arriving alien" or "applicant for admission" and is detaining him under 8 U.S.C. § 1225(b)(2), which ICE asserts mandates his detention without a bond hearing. Id. ¶ 23.

On January 7, 2026, Petitioner appeared with counsel before an Immigration Judge for a custody redetermination hearing ("bond hearing"). The Immigration Judge determined that the immigration court lacked jurisdiction over Petitioner's claims because he was designated as an arriving alien. Based on the Immigration Judge's representation that Petitioner was not eligible for a bond hearing, Petitioner, through counsel, withdrew his request for a bond hearing. Id. ¶ 22.

U.S. Citizenship and Immigration Services ("USCIS") approved Petitioner's I-751 (Petition to Remove Conditions on Residence) after his convictions were sustained and with knowledge of the same allegations now reflected in his Notice to Appear. USCIS later approved Petitioner's I-485 (Application to Register Permanent Residence or Adjust Status). Id. ¶ 24. Petitioner contends that "[t]hose agency adjudications reflect that the issue was already decided in Petitioner's favor at the agency level." Id.

On June 27, 2024, Petitioner filed a Motion to Terminate his removal proceedings in Immigration Court, arguing that his criminal history does not render him inadmissible and that neither Penal Code section 288.3(a) nor section 647(b) categorically constitutes a crime involving moral turpitude. Id. ¶ 25.

Petitioner's case has been transferred from Santa Ana to Adelanto, and the Motion to Terminate has not yet been heard. Id. ¶ 26.

Petitioner contends that DHS has opposed Petitioner's Motion to Terminate but failed to address Petitioner's petty offense argument. Id. ¶ 27.

Petitioner contends that ICE has conceded Petitioner's admissibility by previously retracting an erroneous parole termination. Id. ¶ 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

Petitioner is experiencing inhumane conditions of confinement and has repeatedly requested medical care for illness (sore throat, weakness, cold sweats, shivering, and other respiratory symptoms) on 12/27/2025, 12/28/2025, 01/20/2026, and 01/21/2026, but has not received medical attention. Id. ¶ 29.

On January 22, 2026, Petitioner appeared with counsel for the first time on the detained docket before the Immigration Court in Adelanto, CA for his removal proceedings. The matter was reset to March 4, 2026, for the parties and the court to further discuss relief eligibility and supplement the pending relief applications. Cervantes Decl. ¶ 18.

### III. LEGAL STANDARD

"Ex parte applications are permitted solely for extraordinary relief. Whether to grant them is within the discretion of the district court." Thomas v. Thomas Wylde, LLC, No. 17-CV-04158-JAK (PJWx), 2017 WL 8236279, at *1 (C.D. Cal. June 7, 2017). To justify such relief, an applicant must present evidence showing that it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." See Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).

A temporary restraining order is an "extraordinary remedy," and a motion requesting one is assessed under the same rubric as a motion for a preliminary injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               'O'

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

622 F.3d 1045, 1053 (9th Cir. 2010). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

If the Court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue. C.D. Cal. L.R. 65-1.

## IV.    DISCUSSION

The Court finds that granting Petitioner's *ex parte* application for relief is appropriate because Petitioner's allegation of unlawful detention constitutes irreparable injury. See Mission Power, 883 F. Supp. at 492 (discussing showing required for *ex parte* relief); Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").

### A.    Jurisdiction

Petitioner argues that there are serious questions as to the merits of DHS' charge that he is inadmissible under INA § 212(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude. TRO at 4. Petitioner argues that his "inadmissibility is being actively contested in removal proceedings." Id. Moreover, petitioner argues that the administrative record undermines ICE's claim that Petitioner must be treated as inadmissible, given that USCIS approved Petitioner's I-751 and later approved Petitioner's I-485 after Petitioner's convictions and with knowledge of the same reflected in his Notice to Appear for removal proceedings; that DHS failed to address Petitioner's petty offense argument in opposing his Motion to Terminate removal proceedings; and that "ICE issued a written retraction confirming that a 'Notice of Termination of Parole was sent 'in error' and that '[n]o action will be taken' with respect to parole as indicated in that notice. (Exhibit 1, p. 42.)." Id. at 5-6.

To the extent that petitioner challenges the grounds for his pending removal proceedings, this Court lacks jurisdiction to review Petitioner's challenge. 8 U.S.C. § 1252(g) explicitly deprives the Court of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

*commence* proceedings, *adjudicate* cases, or execute removal orders against any alien under this chapter." 8 U.S.C. S 1252(g) (emphases added). See <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 294 n.3; <u>Ibarra-Perez v. U.S.</u>, 154 F.4th 989, 996 (9th Cir. 2025); <u>Balogun v. Sessions</u>, 330 F. Supp. 3d 1211, 1214 (C.D. Cal. 2018); <u>see</u> also 8 U.S.C. §1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in *judicial review of a final order* under this section.") (emphasis added). Therefore, this Court lacks jurisdiction to hear Petitioner's challenge to the merits of DHS' pending removal proceedings against him. However, these statutory provisions do not provide a jurisdictional bar to this Court's ability, pursuant to 28 U.S.C. § 2241, to review Petitioner's claims that his *detention* is unlawful. See <u>Mosqueda v. Noem</u>, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973) ("The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

### B.   Petitioner is Likely to Succeed on the Merits Challenging his Detention

####    1.   Procedural Due Process

Petitioner argues that his re-arrest on November 21, 2025, without a hearing—and after being released on his own recognizance in November 2023—violates the Due Process Clause of the Fifth Amendment. TRO at 6-7.

In opposition, Respondents argue that Petitioner has not demonstrated that his present detention is unlawful. Opp. at 3. They contend that "the government's authority to re-detain individuals previously released on parole by ICE is discretionary[] and … does not require the type of intensive threshold evidentiary procedure that Petitioner suggests." <u>Id.</u> (citing 8 C.F.R. § 212.5(e)(2)(i)). Respondents argue that "[t]he government is authorized to revoke the parole it had previously granted [Petitioner] under 8 C.F.R. § 212(d)(5). … Petitioner does not submit evidence demonstrating that his parole could not be revoked or was improperly revoked relative to his removal proceedings." <u>Id.</u> at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

In the alternative, Respondents argue that even if Petitioner's procedural due process rights were violated by his re-detention because "there were some defect in the revocation of Petitioner's release on his own recognizance," "the narrowly tailored remedy would not be immediate release" but to afford Petitioner "a bond hearing consistent with his rights as a detainee." See id. at 6.

The Court finds that Petitioner is likely to succeed on the merits of his procedural due process claim.[2] "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The right to due process extends to noncitizens in the United States. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even aliens shall not ... be deprived of life, liberty, or property without due process of law."); Trump v. J. G. G., 604

---

[2] The Court joins numerous other district courts reaching the conclusion that petitioners facing similar facts to the present case are likely to succeed on the merits or at least raise serious questions going to the merits of their procedural due process claims. See e.g. Pinchi v. Noem, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021 (N.D. Cal. 2025); Doe v. Becerra, 787 F. Supp. 3d 1083 (E.D. Cal. 2025); Garcia v. Santacruz, No. 2:25-cv-10581-MWC-PD, 2025 LX 535592 (C.D. Cal. Nov. 10, 2025); Tut v. Noem, No. 5:25-cv-02701-DOC-AGR, 2025 LX 415266 (C.D. Cal. Oct. 16, 2025); Pop v. Noem, No. 5:25-cv-02589-SSS-SSC, 2025 LX 425456 (C.D. Cal. Oct. 3, 2025); Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); Pablo Sequen v. Albarran, No. 25-CV-06487-PCP, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679 (E.D. Cal. July 11, 2025); Espinoza v. Kaiser, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785 (E.D. Cal. Sept. 18, 2025); Polo v. Chestnut, No. 1:25-CV-01342 JLT HBK, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

U.S. 670 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation modified).

It is also well-established that freedom from government detention is a protected liberty interest. See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). While the government may have "the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody, she has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Petitioner have a liberty interest in remaining out of custody on bond.").

Here, it is undisputed that following the issuance of his November 30, 2023 Notice to Appear charging him of being removable from the United States, Petitioner was paroled pending his removal proceedings and released on his own recognizance. Pet. ¶ 16; Cervantes Decl. ¶ 8. He has enjoyed his conditional release for nearly two years. See id.; Pet. ¶¶ 19. His release was an implicit promise that he would be able to stay free from detention for the duration of his administrative proceedings absent changed circumstances. See Morrissey v. Brewer, 408 U.S. 471, 41-84 (1972) (a parolee "relie[s] on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty.). Petitioner thereby gained a protected liberty interest in remaining out of custody.

Having determined that Petitioner has a protected liberty interest remaining out of custody, the Court applies the three-part test established in Mathews v. Eldridge, 424 U.S. 319 (1976) to determine whether the government's procedures were constitutionally sufficient. The Mathews test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. The Court finds that each of the three Mathews factors supports Petitioner's right to a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial liberty interest in remaining out of custody after having initially been conditionally released by immigration enforcement officials. Respondents argue that DHS has extensive discretion in deciding whether an individual should be detained or re-detained, as if that discretion lessens Petitioner's interest in remaining conditionally free from detention. Opp. at 3. But "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). Here, Petitioner was released from ICE custody after his initial apprehension and has been free from detention for nearly two years. His release from ICE custody constituted an "implied promise" that his liberty would not be revoked unless he "failed to live up to the conditions of his release." Morrissey, 408 U.S. at 482. Accordingly, Petitioner's private interest in retaining his liberty is significant.

Second, the Court finds that the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community. Zadvydas, 533 U.S. at 693-94. Respondents do not argue that Petitioner is or has been previously determined to be a flight risk or a danger to the community. Furthermore, the Court finds that ICE's initial decision to release Petitioner on November 30, 2023 reflects a determination that Petitioner was neither a flight risk nor a danger to the community at that time. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither."). Respondents do not contest that Petitioner abided by the conditions of his release and reported to his appointments at the ICE Los Angeles Field Office. See Cervantes Decl. ¶ 16. The Court finds no reason to determine that Petitioner, if not in custody, would fail to appear in future immigration proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

Third, the Court finds that the government's interest in keeping Petitioner detained is low. As explained, the government has not shown that Petitioner's detention serves either to prevent flight or a danger to the community. See Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("As to the third factor, the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). "Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). "In immigration court, custody hearings are routine and impose a 'minimal' cost." Singh v. Andrews, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025). "The government's interest is further diminished where a person 'has consistently appeared for [his] immigration hearings ... and [ ] does not have a criminal record." Id. (citation omitted).

Accordingly, the Court concludes that Petitioner has shown a likelihood of success on the merits that his right to due process was violated by his detention without a hearing, and that procedural due process affords Petitioner the right to a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022) ("clear and convincing evidence standard of proof" is based on "general principles of procedural due process, reasoning that a detained person's liberty interest is substantial").[3]

    2.    Substantive Due Process

The Court finds that Petitioner's complaint also raises serious questions going to the merits of his substantive due process claim. "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." Brittain v.

---

[3] In Rodriguez Diaz, while the Ninth Circuit concluded that a clear and convincing standard was not constitutionally required in 8 U.S.C. § 1226(a) bond hearings because the procedure provided by statute was constitutionally adequate, the Court finds that neither the statute nor the holding of Rodriguez Diaz directly address the standard of proof for a pre-detention hearing after an initial release from custody. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

Hansen, 451 F.3d 982, 991 (9th Cir. 2006). As described above, Petitioner's freedom from custody after his initial detention is a protected and weighty liberty interest. Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained. Jackson v. Indiana, 406 U.S. 715, 738 (1972). Given that civil immigration detention is justified only when an individual poses a flight risk or a danger to the community, Zadvydas, 533 U.S. at 690, and the government had previously released Petitioner on parole upon a finding that he was neither, the Court finds that Petitioner has demonstrated at least a serious question as to whether his detention violates his substantive due process rights by failing to serve any valid purpose.

    **C.    Petitioner is Likely to Suffer Irreparable Harm**

"It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023). The Court finds that Petitioner would be immediately and irreparably harmed by his continued deprivation of liberty without due process. See Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); see also Rodriguez v. Robbins, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

Furthermore, the Court finds that Petitioner is likely to suffer irreparable harm if he is re-detained without due process. The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." Hernandez, 872 F.3d at 995. Petitioner has alleged that he is experiencing inhumane conditions of confinement and has repeatedly requested medical care for illness but has not received medical attention. Pet. ¶ 29. Continued detention or re-detention would likely prevent Petitioner from accessing the medical care that he seeks.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
|---|---|---|---|
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

### D. Balance of Equities and the Public Interest

The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). Respondents argue that the government has a significant interest in the enforcement of its immigration laws. Opp. at 7 (citing cases). The Court agrees. Nevertheless, the Court finds that the balance of equities and public interest factors tip in favor of Petitioner because Petitioner challenges his detention that is likely in violation of federal law and the Constitution. See Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law.") (citations omitted); see also Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). Furthermore, if Respondents later prove that Petitioner's detention is necessary to prevent flight or danger to the community, then re-detention may be permitted by an immigration judge.

Considering the TROs and preliminary injunctions granted in similar cases challenging the denial of due process[4] to immigrants in detention, the Court is not persuaded that judicial intervention here would disrupt the status quo or inject uncertainty into the immigration enforcement process.

### V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Petitioner's request for a temporary restraining order. It is hereby **ORDERED** that:

1. Respondents shall effectuate Petitioner's immediate release from custody;

2. Respondents shall not re-arrest or re-detain Petitioner without a pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present;

---

[4] See supra n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00755-CAS-DFM | Date | January 30, 2026 |
| Title | Umair Wasim v. U.S. Immigration and Customs Enforcement et al. | | |

3. Respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case;

4. Petitioner shall not be relocated outside of the Central District of California pending final resolution of this case; and

5. Respondents shall show cause in writing by no later than seven (7) days of this Order as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a response no later than seven (7) days after respondents' filing.

IT IS SO ORDERED.

                                                                        00 : 00

Initials of Preparer            CMJ